IN THE MATTER OF THE APPLICATION OF THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY ET AL. FOR A SUMMARY DETERMINATION AS TO THE TAXATION OF CERTAIN LANDS IN THE CITY OF NEWARK.

Argued June 10, 1907—Decided November 11, 1907.

1. Under the act for the taxation of railroad and canal property (*Gen. Stat.*, p. 3325, *pl.* 214), as amended by chapter 122 of the laws of 1906 (*Pamph. L.* 1906, p. 220), the "main stem" of a railroad does not extend beyond the roadbed, with its rails and sleepers, and structures erected thereon and used in connection therewith, although such roadbed be less in width than one hundred feet.

2. Under the acts cited (*Gen. Stat.*, p. 3325, *pl.* 214; *Pamph. L.* 1906, p. 220), where the roadbed of a railroad is less than one hundred feet in width, all land adjoining it used for railroad purposes is "second-class" railroad property, locally taxable under *Pamph. L.* 1906, p. 571.

In matter of double taxation.

Before Justices HENDRICKSON, PITNEY and TRENCHARD.

For the applicants, *Vredenburgh, Wall & Carey.*

For the state, *Robert H. McCarter,* attorney-general.

For the city of Newark, *Herbert Boggs* and *Francis Child, Jr.*

The opinion of the court was delivered by

PITNEY, J. This is an application under section 28 of the Railroad Tax law of 1888 (*Gen. Stat.*, p. 3332, *pl.* 239), calling upon the court to solve a question of double taxation upon what is known as lot No. 10, block No. 152, in the city of Newark. The lot consists of a strip about thirty-five feet wide and seven hundred and thirty-five feet long, extending from

the southerly line of Market street to the northerly line of Hamilton street, and lying on the westerly side of the main or thoroughfare tracks of the Pennsylvania railroad that pass through the city of Newark. The platforms of the Market street passenger station and some of the station buildings stand upon this strip.

The lot is indubitably used for railroad purposes. It was assessed for the year 1906 by the state board of assessors as part of the main stem of the Pennsylvania railroad, and also by the local assessors of Newark (under *Pamph. L.* 1906, *p.* 571) as "second-class" railroad property.

For reasons suggested in the opinion delivered at this term in the case of the Belvidere-Delaware Railroad Co. et al., we doubt whether the railroad company has the right to invoke the procedure laid down in section 28 of the act of 1888 for the purpose of determining whether the property is main stem or second-class property.

But no objection to the procedure adopted was made upon the argument; and since writs of *certiorari* would have been allowed to raise the same question, and since all parties concerned are before the court, we have concluded to pass upon the merits, and will consider the proceedings as amended (if necessary) by the substitution of writs of *certiorari* and proper returns thereto.

By the act of 1888 (*Gen. Stat., p. 3325, pl.* 214) the term "main stem" of a railroad was declared to include "the roadbed, not exceeding one hundred feet in width, with its rails and sleepers, (and) depot buildings used for passengers connected therewith." By a recent supplement (*Pamph. L.* 1906, *p.* 220) the main stem "shall hereafter be held to include the roadbed, not exceeding one hundred feet in width, with its rails and sleepers, and all structures erected thereon and used in connection therewith, not including, however, any passenger or freight buildings erected thereon."

The term "roadbed" is of plain import. It signifies the bed or foundation upon which rests the superstructure of rails and sleepers. Giving due effect to the word "main" in the

phrase "main stem," the roadbed that is to constitute main stem must be deemed the bed or foundation of the principal tracks of the railroad at the place in question.

We find from the evidence that the roadbed of the Pennsylvania railroad at the place in question is no wider than the elevated structure upon which the main through tracks are carried, and this structure is only fifty-six feet in width or thereabouts, and includes no part of lot No. 10, block No. 152. The lot in question, being outside of the roadbed, is not within the main stem as defined in *Pamph. L.* 1906, *p.* 220.

As pointed out in the opinion of this court in *Central Railroad Co.* v. *State Board of Assessors, ante p.* 120 (at *p.* 144): "The limitation of width is only one of several limitations that go to make up the statutory definition of main stem. As defined in chapter 122 of the laws of 1906, it does not extend beyond the roadbed with its rails and sleepers and structures erected thereon and used in connection therewith, although this be less in width than one hundred feet. It is only in places where there may happen to be a greater width that the one-hundred-foot limitation has effect." In short, where the roadbed is less than one hundred feet in width (as, for instance, fifty-six feet in the present case), all land adjoining it used for railroad purposes is second-class railroad property. The width of one hundred feet, as used in the statute, is a measure of limitation, not of extension. Main stem can in no event be wider than roadbed; it is narrower where the roadbed is wider than one hundred feet.

Nor do we understand that a contrary view was intended to be expressed in the opinion delivered by Mr. Justice Fort for the Court of Errors and Appeals in the recent case of Jersey City *v.* State Board of Assessors (not yet reported), reversing the decision of this court reported in 44 *Vroom* 170. It is true the learned justice, having first quoted the statute to the effect that the term "main stem" of each railroad, as used in the act, "shall· be held to include the roadbed not exceeding one hundred feet in width, with its rails and sleepers," &c., afterwards employs, *arguendo*, such general expressions as

"the one hundred feet of main stem," and the like. But he goes on to say: "The presumption is that *the roadbed, as laid* under the route as filed, is to be taxed as main stem *within the statutory width.*" In short, it is plain, we think, that he did not use the expression "the one hundred feet of its roadbed," and other like expressions, as meaning that main stem should be treated as having a width of one hundred feet where less than that width is occupied by the roadbed. Indeed, no such question was presented in the case before him.

The present case does not show that plot No. 10 was originally acquired as part of the "right of way" of the railroad. But even if this did appear, the plot could not properly be treated as part of the roadbed, for it is not now used, nor is there any present purpose apparent to use it in the future, for roadbed purposes. The rule laid down by the Court of Errors and Appeals in *United New Jersey Railroad, &c., Co.* v. *Jersey City,* 26 *Vroom* 129, 131, has no application to the present controversy. There the sole question was whether the property in question was used for railroad purposes, not whether it was used for main stem or roadbed rather than for other railroad purposes. In that case the Chancellor said: "We think that where an authorized right of way has been acquired over which a railroad has been constructed and is in good faith operated, which right of way is not devoted to another purpose, it is used for railroad purposes within the meaning of the statute considered, although it may not, for the time being, be wholly occupied by tracks or other railroad appliances. That part of it which awaits railroad occupation upon the demand of necessity is in use, like a curtilage to a dwelling-house or the sides of a country highway."

In the present case the land in question is, of course, used for railroad purposes. But the question whether it is main stem or second-class property is quite a different question. Holding, as we do, that it is outside of the roadbed, it results that it was properly assessed by the city authorities as second-class railroad property. The city tax upon this property should therefore be affirmed.

The proofs do not enable us to determine to what extent the valuation imposed by the state board upon the main stem of this railroad should be reduced by reason of the circumstance that this plot was included in that valuation. This plot was not separately assessed by the board, and we have nothing before us to show what value was attributed to it by them.

It appears that a part of the taxes payable to the state by these companies upon main stem for the year 1906 have been paid. What part does not appear.

We are therefore unable from the proofs to make an order either for a reduction of the assessed valuation of the main stem or for a return by the state to the companies of any portion of the amount paid upon account of the tax thereon.

If desired, we will hear counsel for the applicants and for the state with respect to these matters.